IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAYWON KINCAID #231631; | ) | |
| DARRYL MONTGOMERY #201495; | ) | |
| RUBYN MURRAY #241473; | ) | |
| SAMUEL WEAVER #146467; | ) | |
| LUVERTTE WILLIAMS #258685; | ) | |
| ETHAN DORSEY #200641; | ) | |
| KIRK CHANDLER #158696; | ) | |
| JERAMEY RITTER #220114; | ) | |
| NIGAN PHILLIPS #191350; | ) | |
| MORGAN SHIRLEY #235078; | ) | **CIVIL ACTION NO.** |
| ROBERT HEINTZELMAN #321091; | ) | |
| DEONTAY MACK #240183; | ) | _____ |
| DEVONTE THOMPSON #319674; | ) | |
| JASON CARROLL #325226; | ) | |
| JIMMY NORMAN #313446; | ) | |
| JIMMY HICKS #196744; | ) | |
| MATTHEW ALDRIDGE #244274; | ) | |
| ROBERT SCOTT #300163; | ) | |
| BRUCE BELKNAP #294954; | ) | |
| FELIX THOMPSON #227749; | ) | |
| LUTHER MCCART #158737; | ) | |
| THOMAS BERG #271548; | ) | |
| KARVIS DENNIS #292373; | ) | |
| TORRANCE JULIUS #297222; | ) | |
| JOHN LACHETTE #300965; | ) | |
| JAMEY PEPPERS #287612; | ) | |
| RICHARD BRASHER, JR. #318434; | ) | |
| MICHAEL COLE #263260; | ) | |
| EDDIE BOWMAN #197421; | ) | |
| ANTHONY THOMAS #215190; | ) | |
| ERIC PETTY #314024; | ) | |
| DUSTIN STINSON #300006; | ) | |
| WILLIAM TINDELL #280827; | ) | |
| STEPHEN HARRIS #172793; | ) | |
| BRANDON JARRETT #268594; | ) | |
| BRANDON COLE #306271; | ) | |

PHILLIP SMITH #264092;                          )
PHILLIP MUSGROVE #156436;                        )
JOSHUA MCMILLER #255459;                          )
JOEY GRIZZELL #297073;                            )
DAVID JORDAN #262557;                            )
GARY DAY #218861;                                )
WARREN CAMPBELL #305111;                          )
WILLIE CARLISLE #265869;                          )
JOSEPHUS MURRAY #279613;                          )
WILLIAM WIMBERLY, JR. #157884;                    )
ANTHONY MANIGO, JR. #297971;                      )
ANTHONY DORSEY, II #254169;                       )
TIMOTHY SNOW #135239;                            )
RICARDO FISHER #144006;                          )
JAMES CRONIN, II #321582;                        )
RANDY MOORE #313079;                              )
ROGER GREEN #115865;                              )
JOSEPH WOOD #322218;                              )
ROBERT SEAY #239402;                              )
XAVIER BENSON #252511;                            )
ERIK DIXON #242727;                              )
DARRELL BURGESS #308674;                          )
TAMARCUS BURT #321717;                            )
TREMAIN GATES #295670;                            )
MARVIN FOSTER #237757;                            )
BERNARD KING #251557;                            )
KISON TYMES #325944;                              )
JACK BUTTON #300250;                              )
ORLANDA WALKER #328697;                          )
BARRY WATSON #329515                              )
                                                 )
        Plaintiffs,                              )
                                                 )
v.                                               )
                                                 )
UNITED STATES DEPARTMENT OF THE                  )
TREASURY; and JANET YELLEN,                      )
SECRETARY OF THE UNITED STATES                    )
DEPARTMENT OF THE TREASURY                        )
                                                 )
        Defendants.                              )

## <u>COMPLAINT FOR DECLARATORY</u>
## <u>AND</u>
## <u>INJUNCTIVE RELIEF</u>

Plaintiffs, men incarcerated in the Alabama Department of Corrections (ADOC), bring this action through undersigned counsel to compel the United States Department of the Treasury, directed by Secretary Janet Yellen (collectively, the Treasury), to prevent the State of Alabama from a gross and illegal misuse of Federal funds that were intended to be used to alleviate the unprecedented economic, social and medical crisis caused by COVID-19. Flying in the face of both the letter and the spirit of the American Rescue Plan (ARP), the state of Alabama has elected to use emergency Federal funds to build two new mega-prisons. The Treasury has a duty to stop this action, and its failure to do so is contrary to law, arbitrary and capricious, and constitutes an abuse of discretion under § 706(2)(A) of the Administrative Procedure Act (APA), 5 U.S.C. section 551 (2002).

## INTRODUCTION

1.      Across the United States, states are leveraging federal ARP dollars from the State and Local Fiscal Recovery Funds (SLFRF) to invest in programs such as community violence interventions and behavioral health support and diversion programs that will reduce the country's overreliance on prisons. Alabama, through the Alabama Department of Corrections (ADOC) and Alabama Corrections Institution Finance Authority (ACIFA), has taken the opposite approach, allocating $400 million intended for COVID-19 relief to a new mega-prison construction project. The new prisons will not address any of the issues facing ADOC as a result of the pandemic. On the contrary, because of the decision to award lucrative contracts to frequently hired construction companies, the State of Alabama will have fewer funds to address the pressing crisis that is facing its prison system, made worse by the pandemic.

2.      ADOC is under a court order resulting from a class action alleging ADOC's perpetuation of unconstitutional conditions within the prison system. Furthermore, the US Department of Justice filed a lawsuit against the state of Alabama for violating the 8th Amendment prohibition of cruel and unusual punishment on account of violence and mismanagement (and, notably, not building conditions) throughout all of Alabama's men's prisons. The prisons Alabama is set to build will not address overcrowding—which is arguably the factor most relevant to pandemic recovery and disease prevention.

3.      Building more prisons violates the guiding purpose of ARP: to foster a strong and equitable recovery that will uplift the communities most impacted by the pandemic—namely, low-income communities and communities of color.

4.      Defendants have violated the APA by refusing to intervene in the State of Alabama's allocation of funds for the construction of prisons, in spite of the Treasury's Final Rule and Overview of the Final Rule that makes prison construction a "generally ineligible" use of ARP funds. U.S. Department of the Treasury, Coronavirus State & Local Fiscal Recovery Funds: Overview of the Final Rule, 31 (Jan. 2022), https://tinyurl.com/2p99bfay.

5.      Use of those federal funds for the construction of a state prison is contrary to Congress's intent and therefore violates the U.S. Constitution, including the Appropriations Clause, as well as the Treasury guidance, which states that "[t]he program ensures that governments have the resources needed to: [f]ight the pandemic and support families and businesses struggling with its public health and economic impacts, [m]aintain vital public services, even amid declines in revenue, and [b]uild a strong, resilient, and equitable recovery by making investments that support long-term growth and opportunity. *Id* at 4. The use of ARP

funds to construct prisons diverts legitimate uses of these emergency funds directed to the states for an ineligible purpose.

A.   **APA**

6.    According to APA, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . ." 5 U.S.C. 702.

7.    Agency "action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. section 551(13).

8.    Defendants' failure to act is contrary to law, arbitrary and capricious, and constitutes an abuse of discretion under section 706(2)(A) of APA. Plaintiffs request that this Court grant declaratory and injunctive relief to ensure compliance with the requirements of APA and ARP.

## PARTIES AND STANDING

### *Plaintiffs*

9.    The below Plaintiffs are inmates in the custody and control of the ADOC. Defendant has arbitrarily and capriciously denied them, and all other ADOC inmates, oversight and enforcement of appropriate and legal spending of ARP funds to address the rapid spread of COVID-19 within Alabama's prisons and the impact of the pandemic on a highly marginalized, vulnerable group. The planned construction is not intended to address these injuries in any way. The state is allocating the funds to ADOC to be used in a manner that is related neither to COVID-19 spread, nor to revenue lost during the pandemic. Rather, the state passed the current construction plan after the ARP funds were allocated and expressly indicated that the plan serves

to revive a prior construction plan, which was halted after protests from Alabamians and investors' subsequent commitments not to fund prison construction. Thus, the allocation cannot be construed as a measure intended to make up for a pandemic-related revenue shortfall.

10.     Plaintiff Caywon Kincaid (#231631) is currently housed at Elmore Correctional Facility. Mr. Kincaid has mental health challenges and receives treatment for such challenges by ADOC mental health professionals. Mr. Kincaid has struggled to receive adequate mental health care while in the custody of ADOC, and this challenge has only worsened since the COVID-19 pandemic due to staffing shortages, overcrowding within the prisons, and ADOC's strapped financial resources. The allocation of critical funds to mega-prison facilities and away from medical care, including mental health care, directly hinders Mr. Kincaid's ability to access life-saving mental health services and other medical care.

11.     Plaintiff Darryl Montgomery #201495 is currently housed at Fountain Correctional Facility. Mr. Montgomery has mental health challenges and receives treatment for such challenges by ADOC mental health professionals. Mr. Montgomery has struggled to receive adequate mental health care while in the custody of ADOC, and this challenge has only worsened since the COVID-19 pandemic due to staffing shortages, overcrowding within the prisons, and ADOC's strapped financial resources. The allocation of critical funds to mega-prison facilities and away from medical care, including mental health care, directly hinders Mr. Kincaid's ability to access life-saving mental health services and other medical care.

12.     Plaintiff Rubyn Murray #241473 is currently housed at Elmore Correctional Facility. Mr. Murray has mental health challenges and receives treatment for such challenges by ADOC mental health professionals. Mr. Murray has struggled to receive adequate mental health care while in the custody of ADOC, and this challenge has only worsened since

the COVID-19 pandemic due to staffing shortages, overcrowding within the prisons, and ADOC's strapped financial resources. The allocation of critical funds to mega-prison facilities and away from medical care, including mental health care, directly hinders Mr. Kincaid's ability to access life-saving mental health services and other medical care.

13.     Plaintiff Samuel Weaver #146467 is currently housed at Fountain Correctional Facility. Mr. Weaver has mental health challenges and receives treatment for such challenges by ADOC mental health professionals. Mr. Weaver has struggled to receive adequate mental health care while in the custody of ADOC, and this challenge has only worsened since the COVID-19 pandemic due to staffing shortages, overcrowding within the prisons, and ADOC's strapped financial resources. The allocation of critical funds to mega-prison facilities and away from medical care, including mental health care, directly hinders Mr. Kincaid's ability to access life-saving mental health services and other medical care.

14.     Plaintiff Luvertte Williams #258685 is currently housed at Fountain Correctional Facility. Mr. Williams has mental health challenges and receives treatment for such challenges by ADOC mental health professionals. Mr. Williams has struggled to receive adequate mental health care while in the custody of ADOC, and this challenge has only worsened since the COVID-19 pandemic due to staffing shortages, overcrowding within the prisons, and ADOC's strapped financial resources. The allocation of critical funds to mega-prison facilities and away from medical care, including mental health care, directly hinders Mr. Kincaid's ability to access life-saving mental health services and other medical care.

15.     Ethan Dorsey #200641 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to

address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

16.     Kirk Chandler #158696 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

17.     Jeramey Ritter #220114 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

18.     Nigan Phillips #191350 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

19.     Morgan Shirley #235078 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

20.     Robert Heintzelman #321091 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

21.     Deontay Mack #240183 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

22.     Devonte Thompson #319674 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

23.     Jason Carroll #325226 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

24.     Jimmy Norman #313446 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are

meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

25.     Jimmy Hicks #196744 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

26.     Matthew Aldridge #244274 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

27.     Robert Scott #300163 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

28.     Bruce Belknap #294954 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

29.     Felix Thompson #227749 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

30.     Luther McCart #158737 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

31.     Thomas Berg #271548 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

32.     Karvis Dennis #292373 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

33.     Torrance Julius #297222 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are

meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

34.   John Lachette #300965 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

35.   Jamey Peppers #287612 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

36.   Richard Brasher, Jr. #318434 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

37.   Michael Cole #263260 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

38.     Eddie Bowman #197421 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

39.     Anthony Thomas #215190 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

40.     Eric Petty #314024 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

41.     Dustin Stinson #300006 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

42.     William Tindell #280827 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are

meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

43.     Stephen Harris #172793 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

44.     Brandon Jarrett #268594 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

45.     Brandon Cole #306271 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

46.     Phillip Smith #264092 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

47.     Phillip Musgrove #156436 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

48.     Joshua McMiller #255459 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

49.     Joey Grizzell #297073 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

50.     David Jordan #262557 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

51.     Gary Day #218861 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to

address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

52.    Warren Campbell #305111 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

53.    Willie Carlisle #265869 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

54.    Josephus Murray #279613 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

55.    William Wimberly, Jr. #157884 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

56.     Anthony Manigo, Jr. #297971 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

57.     Anthony Dorsey, II #254169 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

58.     Timothy Snow #135239 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

59.     Ricardo Fisher #144006 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

60.     James Cronin, II #321582 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are

meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

61.     Randy Moore #313079 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

62.     Roger Green #115865 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

63.     Joseph Wood #322218 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

64.     Robert Seay #239402 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

65.     Xavier Benson #252511 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

66.     Erik Dixon #242727 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

67.     Darrell Burgess #308674 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

68.     Tamarcus Burt #321717 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

69.     Tremain Gates #295670 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are

meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

70.     Marvin Foster #237757 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

71.     Bernard King #251557 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

72.     Kison Tymes #325944 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

73.     Jack Button #300250 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

74. Orlanda Walker #328697 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

75. Barry Watson #329515 is currently housed at Elmore Correctional Facility. On account of Defendant's failure to intervene in ADOC's improper expenditure of ARP funds, Plaintiff is directly harmed. Plaintiff will be denied critical access to funds that are meant to address any crises brought on and exacerbated by the pandemic, which are likely to save lives if used properly and legally within the Alabama prison system.

76. Each of the above plaintiffs is aggrieved by the actions of Defendants and has standing to bring this action because of the injury to them caused by Defendants' reduction of federal relief spending in Alabama due to diversion of funding to an unnecessary, unlawful prison project.

77. The impact upon Plaintiffs of ARP funds being used to build prisons rather than address actual crises within ADOC cannot be overstated. When a Plaintiff falls within the zone of interest protected by a federal statute and suffers an injury that was "proximately caused by a violation of that statute," a statutory cause of action exists. *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014) (quoting *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 97, and n. 2. Pp. 10–18). By ADOC's own admission, Plaintiffs as incarcerated individuals are part of a community upon which the impacts of the pandemic fell hardest: "low-income communities, people of color and tribal communities," who faced greater threats to their physical health and economic well-being than other communities.

The letter from ADOC to Treasury, submitted during the public comment period in response to the Interim Final Rule on SLFRF while the Final Rule was being developed, said the "typical incarcerated person" comes from "a low socio-economic background with limited education," and "often has a prior history of substance abuse (estimated 75-80% of incarcerated persons) and/or mental illness." *ADOC Public Comment to the Treasury re: Interim Final Rule on SLFRF, July 15, 2021.* The letter also said more than half of Alabama inmates "are persons of color," and that "nearly all incarcerated persons would be deemed to be indigent, and would remain so until his/her release." "Most incarcerated persons would, therefore, be part of the class described in the Interim Rule even prior to incarceration," the letter said. "These disadvantages were further exacerbated by the communal living situation." "Logically, incarceration during the pandemic caused an extra layer of strain on the population than persons who enjoyed more freedoms," the letter said.

78.     The letter also said most rehabilitation and educational programs declined in prisons during the pandemic. Dunn wrote that the number of inmates getting GEDs dropped 47%, with vocational certificates dropping 29%. Completion of drug treatment programs fell 43%. "It will take several months, if not years, before the correctional system is back to "normal" and operating at pre-pandemic functionality, due to its limited infrastructure," the letter said. Therefore, Alabama does recognize that there are pressing needs for federal funding to address pandemic-related crises in the prison system, which have compounded pre-existing unconstitutional conditions. Plaintiffs would not be filing this action if ADOC had elected to spend funds on rehabilitative programming, increased staffing, or overcrowding reduction measures. Not only does the construction of two mega-prisons not address any of the actual crises facing Plaintiffs, made worse by an unprecedented pandemic, but it actively prevents the

state from having the funds to properly address the way that the pandemic has impacted Plaintiffs within the prison system.

79.    The above-listed incarcerated Plaintiffs have exhausted all administrative remedies available to them as required by the Prison Litigation Reform Act.

### *Defendants*

80.    Defendant United States Department of Treasury is the federal agency to which Congress has given responsibility for distributing ARP funds in accordance with the statutory scheme of ARP. Congress empowered the Treasury to create guidelines to interpret ARP, and the Treasury created such guidelines. However, they are improperly and arbitrarily exempting Alabama from those guidelines.

81.    Defendant Janet Yellen, Secretary of the Treasury, oversees the Treasury and is responsible for the actions and decisions that are being challenged by Plaintiffs in this action. Defendant Yellen is sued in her official capacity.

### JURISDICTION AND VENUE

82.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331, 1346, 1361 and 5 U.S.C. sections 702–703.

83.    An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. section 2201(a), and this Court has authority to grant declaratory and injunctive relief under 28 U.S.C. sections 2201 and 2202.

84.    Venue lies in this Court as this is a civil action brought against an agency of the United States and an officer of the United States acting in her official capacity, pursuant to 28 U.S.C. section 1391(e).

## LEGAL BACKGROUND

### A.    APA

85.    The APA confers a right of judicial review on any person that is adversely affected by agency action. *See* 5. U.S.C. section 702. The APA provides that the reviewing court "shall…hold unlawful and set aside agency action, findings, and conclusions found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*, section 706(2)(A).

86.    Defendants' failure to intervene in Alabama's use of federal funds dispensed and overseen by Defendants for the construction of mega-prison facilities is an "agency action" subject to judicial review under the APA. *Id*.

### B.    ARP

87.    Congress appropriated limited funding toward pandemic relief through ARP. Congress empowered the Treasury to oversee the allocation, distribution and oversight of these funds. The Treasury has issued numerous statements outlining appropriate uses for ARP funding and placed restrictions on certain spending. Among the categories deemed improper for deployment of ARP funds are "[c]onstruction of new correctional facilities." U.S. Department of the Treasury, *Coronavirus State & Local Fiscal Recovery Funds: Overview of the Final Rule*, 31 (Jan. 2022), https://tinyurl.com/2p99bfay.

88.    Despite the language and purpose of ARP and the subsequent comments and clarifying guidelines provided by the Treasury, the Treasury has declined to intervene to end the improper and illegal use of federal funds by the State of Alabama to construct correctional facilities.

## FACTS GIVING RISE TO LEGAL CLAIMS

**A.      Impact of the COVID-19 pandemic**

89.      The first recorded case of COVID-19 in the United States was reported on January 20, 2020, in Washington state. In the two and a half years since the first case was detected, the Centers for Disease Control and Prevention (CDC) has recorded more than 88 million confirmed cases of COVID-19 nationwide, and more than 1 million Americans have died from contracting the virus. An unknown number of Americans who contracted the virus have survived, but have developed long-term disabilities during the course of illness.

90.      The first recorded case of COVID-19 in Alabama was reported on March 13, 2020. In the two and a half years since the first case was detected, the CDC has recorded more than 1.3 million confirmed cases of COVID-19 in Alabama, and close to 20,000 Alabamians have died from contracting the virus. Higher-than-average rates of chronic health conditions like diabetes, high blood pressure, obesity, heart disease, and chronic lung disease among Alabama residents meant that the state was particularly vulnerable to the fast-spreading virus. By May 2020, seven of the top twelve counties in the nation identified as "high-risk" were located in Alabama. These included Butler, Bullock, Choctaw, Dallas, Hale, Lowndes, and Marengo counties, all of which are rural counties with high Black populations in Alabama's Black Belt region. These pre-existing health risks were exacerbated by the fact that Alabama is the sixth poorest state in the nation. According to CDC data as of July 8, 2022, Alabama has the third highest death rate from the COVID-19 pandemic among all states at 403 deaths per 100,000 people. So many people in Alabama were killed by the COVID-19 pandemic in 2020 that it became the first year in state history where more deaths were recorded than births. Only Mississippi and Arizona have experienced higher death rates.

91.    The COVID-19 pandemic severely disrupted the global economy and was the largest recession event since the Great Depression. At the unemployment rate peak in April 2020, more than 14 percent of the U.S. workforce was unemployed. The financial impact of the recession was not evenly distributed across the population. Women, people of color, and low-wage workers suffered disproportionate impact.

92.    In Alabama, the effect of the 2020 recession was severe. Women and workers of color suffered the greatest negative impact. Between April 23 and July 21, 2020, half of women in Alabama reported that they were not working, compared to 43 percent of men. The majority of Black people in Alabama reported that they were not working, compared to 47 percent of white people in Alabama. Black workers were overrepresented in "essential worker" and low-wage sectors of the workforce during the onset of the pandemic. Among Black workers in Alabama in 2020, 55 percent worked in essential occupations, including as nurses, cashiers, or cooks, which typically resulted in the requirement to continue in-person work during the pandemic despite the elevated risk of exposure to the virus.  The sharp increase in unemployment during the first six months of the 2020 recession was more than five times Alabama's job loss during the first six months of the Great Recession of 2008. The predominantly Black, rural communities of the Black Belt region were particularly harmed.

**B.**    **Development and implementation of the American Rescue Plan Act of 2021**

93.    Responding to both the mass casualty event of COVID-19 and its debilitating economic consequences, Congress drafted the American Rescue Plan Act of 2021 ("ARP"). The intent of Congress in drafting and passing the bill was clear: to respond to the many acute, intense, and varied needs generated by the COVID-19 pandemic, and to provide immediate relief to affected people across the country. Lead bill sponsor Representative John

Yarmuth said of the legislation that he is proud to see ARP funds deployed "for vaccinations, vital support for workers and businesses, and to help our communities come out of this crisis stronger than before." He continues, "For too long in our country, working families have been left to face personal and widespread crises on their own with little or no help from their government." Congressman John Yarmuth (KY-3), Facebook (May 11, 2021) https://tinyurl.com/2p8s3vr9.

94.     On March 11, 2021, President Joseph Biden signed ARP into law. On February 26, 2021, President Biden released a statement expressing support of ARP and for its purpose of "support[ing] the Administration's Government-wide strategy to combat COVID-19. This includes funding to set up community vaccination sites nationwide, scale up testing and tracing, eliminate supply shortage problems, invest in high-quality treatments, address health disparities, and ensure workplace health and safety protections." White House, *STATEMENT OF ADMINISTRATION POLICY: H.R. 1319 – American Rescue Plan Act of 2021* (Feb 26, 2021).

95.     The White House report acknowledged that "the pandemic has created unprecedented challenges for [...] families of color disproportionately impacted." *Id*.

96.     The Coronavirus State and Local Fiscal Recovery Funds (SLFRF), a part of the American Rescue Plan, empowered Defendant Treasury to oversee and monitor the disbursement of $350 billion to state, local, and Tribal governments across the country to support their response to and recovery from the COVID-19 public health emergency.

97.     Recipients are required to comply with Treasury's Compliance and Reporting Guidance and meet the compliance and reporting responsibilities defined in the Final Rule, which includes submitting mandatory periodic reports to Treasury.

98.   Treasury actively tracks ARP funds disbursement projects and screens projects for appropriateness of use.   Treasury has highlighted uses of the project that have "made a difference in the lives of millions of Americans – expanding access to COVID-19 vaccines and testing, providing economic relief that has kept millions of children out of poverty, preventing evictions and foreclosures, and helping small businesses keep their doors open." US Department of the Treasury, *American Rescue Plan State and Local Fiscal Recovery Funds: Project Highlights* (March 11, 2022). Among the programs highlighted are:

- The Central Council Tlingit & Haida Indian Tribes of Alaska will provide premium pay of $4.00 per hour to 60 childcare workers in the early education departments directly involved in the care or education of students.

- The State of Arkansas used over $64 million to increase hospital bed capacity and support an alternative care facility to respond to COVID-19's health impacts.

- Yavapai County, Arizona will use $20 million for the design, construction, implementation, and maintenance of telecommunications equipment and services providing "last mile" internet access to communities. The focus is on ensuring unserved or underserved households and businesses in unincorporated areas in Yavapai County receive high-speed broadband.

- Fort Collins, Colorado allocated $400,000 for a Multicultural Business and Entrepreneur Center designed to address gaps in the current business support system that affect small businesses, especially businesses owned by entrepreneurs of color, women, and low-income individuals that do not have the same access to or knowledge of resources, technical assistance, or social support networks.

- The State of Delaware will provide $25 million to help hospitals retain and attract staff, including nurses and other front-line caregivers.

- Palm Beach County, Florida is allocating $20 million towards developing 19 acres of county-owned land into affordable housing.

- The State of Georgia used funds to provide grants of up to $165,000 per nursing facility for expenses incurred to contain and mitigate the spread of COVID-19 in congregate living facilities.

- The State of Hawaii is investing $5 million in their Green Jobs Youth Corps program, which provides entry level, one year positions and on the job training to recent graduates and displaced workers, while providing support for the green sector and providing economic benefits for Hawai'i.

- Chicago, Illinois will devote $75 million to a comprehensive set of programs to coordinate resources and holistically reduce and prevent violence in Chicago's communities, including through the City's community safety coordination center. Funds will help expand violence intervention programming, support community groups, and provide resources like mental health supports, housing, food, and compensation for victims of crime.

- The State of Kansas used $49 million for a Hospital Employee Retention Plan to help eligible hospitals offer premium pay to their employees to reward and retain essential frontline healthcare workers.

- The State of Louisiana will provide grants of up to $25,000 to small businesses for workforce development activities that assist with COVID-19 response and recovery. Eligible activities include workforce preparation, vocational skills training, or services

that improve an individual's employment opportunities, such as basic education; academic education; vocational, technical, or occupational education; job readiness training; or job search training.

- Howard County, Maryland has committed $2 million to provide retention and signing bonuses for school bus drivers and attendants.

- The State of Maryland is investing $140 million in expanding access to broadband internet.

- Boston, Massachusetts is investing $3 million to expand green jobs training opportunities for city residents, with a particular focus on women, people of color, immigrants, and returning citizens.

- The State of Minnesota has used funds for a Learning Loss Mitigation Project, funding nonprofit organizations, postsecondary institutions, and school districts to prepare low-income students and students of color for college in the wake of the COVID-19 pandemic.

- Jackson, Mississippi is investing $14.4 million in water infrastructure to ensure clean water and quality infrastructure in underserved areas of the community.

- The State of Montana spent $15 million to assist nursing homes and long-term care facilities in order to continue to provide safe care to the state's seniors during the pandemic.

- Manchester, New Hampshire will use $1 million to support a universal newborn home visiting program, providing home visits from trained professionals to new mothers to address health disparities, support families, and help connect them with health care and other resources.

- The State of New Jersey has committed $790 million to rental and utility assistance for households affected by the pandemic. The State will also fund an Office of Eviction Prevention to provide services to help households avoid eviction and support housing stability.

- The Mescalero Apache Tribe has enacted a workforce development project that promotes new skills and offers certificate programs for carpentry, plumbing, auto-mechanic, etc. and other training programs for employees.

- New York State will use $100 million to provide one-time stimulus payments of $2,750 to as many as 36,000 workers in select tourism sectors who have been displaced from employment because these sectors and jobs are least likely to have returned following the pandemic.

- Cleveland, Ohio will use funds to replace $109 million in revenue lost due to the pandemic; these funds will be used for salary and benefits of public safety staff, including staff for the Divisions of Police, Fire, and Emergency Medical Services.

- Tulsa, Oklahoma has committed $6.5 million to help minority-owned small businesses grow. The program will partner with the Black Wall Street Chamber of Commerce to provide education, mentorship opportunities, and referrals to capital access to Black and Indigenous People of Color (BIPOC) startups, entrepreneurs, and small businesses.

- Based on feedback from the community, Dorchester County, South Carolina will use $1.5 million to expand healthcare opportunities in the area.

- Shelby County, Tennessee will use funds to replace revenue lost due to the pandemic; the county will use $19 million of these funds to support the public hospital, including funding for additional medical staff, equipment, and supplies needed to respond to the

pandemic's health impacts. The county will also use $8 million to operate COVID-19 testing and vaccination sites.

- Austin, Texas will use $3.3 million to provide childcare to families with low incomes and to support childcare teachers and staff, including those who are working to further their education in the early childhood field.

- Salt Lake City, Utah will use $4.25 million for recruitment and retention pay for police officers and police department supporting staff. The police department experienced higher-than-usual attrition during the pandemic, and competitive pay was identified as a main factor needed to reduce attrition and help retain qualified staff.

- Putnam County, West Virginia will use $10 million to construct a fiber optic broadband network designed to provide reliable, high speed internet to all residents and business in the county.

- The State of Wisconsin has used $18 million so far for COVID-19 testing. This program provides funding for lab testing and specimen collection, state employee COVID-19 testing, and a testing payment program.

- The State of Wyoming used $16 million to partner with the Wyoming Hospital Association on work to address staff retention, recruitment issues, and vaccine incentive programs related to COVID-19 pandemic.

  *Id.*

C.  <u>**Alabama's Approach**</u>

99.    The State of Alabama, through its First Special Session of 2021, determined that an appropriate use of approximately 20% of its ARP funds (and approximately 80% of its ARP funds classified as "lost revenue") would be to construct two prison facilities in

Elmore and Escambia counties. The State cited as reasons for this allocation the overcrowding, understaffing, inadequate programming space, and inadequate healthcare and mental healthcare of its current prison facilities.

100.   The authorizing legislation for the two new correctional facilities in Elmore and Escambia counties was HB4. The legislation's text provided for a three-phase, system-wide overhaul of ADOC's physical infrastructure. It also granted ACIFA permission to issue bonds related to the project outlined in the legislation, not to exceed $785 million.

101.   The first phase authorized by HB4 involves the construction of two 4,000-bed correctional facilities, one each in Elmore and Escambia counties. The first phase includes provisions that Elmore Correctional Facility, Kilby Correctional Facility, and Staton Correctional facility shall be closed within one year of the completion of both new correctional facilities. The first phase also includes the provision that St. Clair Correctional Facility shall be closed at some date yet to be determined by the ADOC after both new correctional facilities are completed. The cumulative effect of these prison constructions and closures would not result in a significant change in the net capacity of the ADOC, meaning that it will not address overcrowding.

102.   The second phase authorized by HB4 involves the construction of a new 1,000-bed correctional facility for women. Within one year of completion of that new facility, the legislation provided that the only existing women's correctional facility in Alabama (Julia Tutwiler Prison for Women) shall be closed. In the second phase authorized by HB4, there are also provisions that multiple existing correctional facilities for men shall be renovated, improved, or else demolished and reconstructed (Donaldson Correctional Facility, Limestone Correctional Facility, and either Bullock Correctional Facility or Ventress Correctional Facility).

103.    The third phase authorized by HB4 requires the ADOC to re-evaluate system-wide needs in view of the impact of alterations made during phases one and two. As part of this broader re-evaluation process, the ADOC is specifically directed to plan for the future of Bibb Correctional Facility and its potential for repurposing.

104.    Beyond the three-phase project outline, HB4 also carved out an exception to the State's standard competitive bid process for public works projects. While public works projects typically require a bidding process, HB4 permitted construction contracts for the two new facilities to be directly negotiated with private companies.

105.    At the time of HB4's passage, Alabama House bill sponsor Rep. Steve Clouse stated that Caddell Construction and B.L. Harbert International were expected to be awarded the contracts because they had been part of the State of Alabama's failed 2021 plan to build two private 4,000-bed prisons in Elmore and Escambia counties. "These companies that have done work already dealing with design work and getting things in place to get ready to go, while they've been doing their due diligence, they've spent a lot of money to put these things in place," Rep. Clouse said in explaining the elimination of a bid process for this public works project. "Time is of the essence and this is going to enable us to start these projects 12 months in advance, and time is money. And so that's the main reason."

106.    Alabama Speaker of the House Rep. Mac McCutcheon explained that there was no need for a competitive bid process for the construction of two new prisons authorized by HB4 because those prisons were simply the continuation of the prior, failed effort to build two private 4,000-bed prisons in Elmore and Escambia counties. "During the [2021] lease program, there was a process, a bidding process that [Caddell Construction and B.L. Harbert International] went through," McCutcheon said. "To say that we're just going to borrow

money on a bond issue and then put somebody to work, that's not what happened. There was a process and there was a bidding process."

107.    Alabama Senate sponsor of HB4, Sen. Greg Albritton, made clear at the time of passage that the State planned to race forward with construction on an accelerated timetable. In October 2021, he stated: "We've got to get these facilities out of the ground and in operation. And we're going to move forward as fast we can to get this done. All we've got to do between now and then is get the site work completed, which is already in process. Get the folks hired and on the job. And we'll start construction."

108.    The authorizing legislation for allocating $400 million in ARP funds for prison construction in October 2021 was HB5. HB5 included "a supplemental appropriation of federal funds from The American Rescue Plan Act - Coronavirus State Fiscal Recovery Revenue Replacement Fund to the Department of Corrections - Correctional Capital Improvement Fund in the amount of $400,000,000 for the fiscal year ending September 30, 2022."

109.    The ADOC submitted a public comment to Defendant Treasury on July 15, 2021, requesting guidance on what potential ADOC uses of ARP funds would be considered eligible. At that time, Defendant Treasury was in the process of developing the Final Rule on SLFRF. By submitting a request for guidance on the eligible and ineligible uses of ARP funds to Defendant Treasury, ADOC acknowledges that Defendant Treasury has certain authority to direct the use of ARP funds. However, ADOC and the State of Alabama did not wait for a response or a  Final Rule from Defendant Treasury before committing $400,000,000 in ARP funds toward prison construction in October 2021.

110.    When Defendant Treasury published the Final Rule on Coronavirus SLFRF on January 6, 2022, the Overview of the Final Rule stated that the construction of correctional and congregate facilities are considered "generally ineligible" uses of ARP funds.

111.    Defendant Treasury has not taken action to formally review or prevent the State of Alabama and the ADOC from using $400,000,000 in ARP funds to build new correctional facilities, which are defined as "generally ineligible" uses of ARP funds in Defendant Treasury's Overview of the Final Rule.

112.    The $400,000,000 in ARP funds appropriated by the State of Alabama for constructing new correctional facilities represents more than 30 percent of the budget for the construction project. Alabama would not be able to proceed with the project without the $400,000,000.

### a.    History of Alabama's prison construction plans

113.    In April 2016, Governor Robert Bentley proposed legislation through Representative Steve Clouse (HB313) to build four prisons through a $800 million bond issue.

114.    On May 4, 2016, Bentley's prison construction proposal failed in the final minutes of the legislative session despite a last minute attempt to scale back the bill to $550 million. Chandler, Kim, *Gov. Bentley's prison plan fails on session's final day*, Washington Times (May 5, 2016) https://tinyurl.com/y5r2fjrj.

115.    Then-House Speaker Mike Hubbard commented, "I don't want to pass something that looks like it was figured out on the back of an envelope in two hours." Chandler, Kim, *Gov. Bentley's prison plan fails on session's final day*, Washington Times (May 5, 2016) https://tinyurl.com/y5r2fjrj.

116.    In May 2017, then-Governor Bentley and then-Senator Cam Ward of Alabaster proposed similar legislation that failed again in May of 2018 due to heavy criticism from Alabama House of Representatives members over the expected $200 million to $845 million that would be borrowed to fund the prison plans. Alabama Public Radio, *Sen. Ward Says Prison Construction Bill is Dead*, Associated Press (May 18, 2017).

117.    The new governor of Alabama, Kay Ivey, and ADOC have aspired to achieve their own version of the Bentley plan to construct two or three new 4,000-bed prisons since at least February 2019, more than a year before the first recorded case of COVID-19 in Alabama.

118.    On February 1, 2021, Governor Kay Ivey and the ADOC Commissioner executed two lease agreements for prison facilities in Elmore County and Escambia County with private prison company CoreCivic, Inc. Under those agreements, CoreCivic was set to design, finance, and build two mega-prisons with a total capacity of approximately seven thousand state inmates. The prisons were to be leased to ADOC for at least thirty years. The plan had a projected cost of approximately $3 billion.

119.    The agreements between ADOC and CoreCivic were executed without consent by vote of the Alabama Legislature. Due to the past issues with securing consent of the Legislature to issue bonds to finance the construction of new prisons, Governor Ivey's initial plan with private companies attempted to circumvent the Legislature entirely.

120.    Ivey's prison plan faced harsh critique at the local and national level. On April 19, 2021, the lead underwriter of the bond issue that would have financed the private build, Barclays Capital, pulled out of the project after mounting criticism.

121.    On June 1 of 2021, the deadline for financing proposals from CoreCivic and Alabama Prison Transformation Partners passed, signaling the failure of the public-private partnership. Ivey said of the matter, "It is not a question of if this [prison construction] will happen, but how."

122.    On September 23, 2021, Governor Ivey announced that she would be calling the Alabama Legislature into a special session to "address Alabama's longstanding prison infrastructure challenges." In the last week of September 2021, Governor Ivey convened a Special Session of the Legislature to pass a plan for financing the construction of two mega-prison facilities for approximately $1.3 billion. As a part of that Special Session, the Legislature was tasked with approving the use of $400 million in ARP funds to bridge the gap of what the state could come up with on its own.

123.    On October 1, 2021, Governor Ivey signed into law HB4 and HB5, which authorized the use of $400 million (20%) of Alabama's $2.1 billion to partially finance the construction of the two men's prisons. According to the Design-Build Contract between Caddell Construction Co. (DE), LLC (Caddell) and ACIFA dated April 15th, 2022, the prison in Elmore would cost $623,646,000 or less. The state has indicated a similar cost structure for the Escambia prison, but details have not been released to the public. ARP funds will therefore cover over 30% of the projected cost. To reiterate, without these federal funds, Alabama would not be able to construct these prison facilities. Representative Steve Clouse, who sponsored the bills, said in response to questions regarding the possibility of the use of ARP funding being deemed ineligible. "I don't think we have a Plan B, [and] I don't think we need a Plan B."

124.    Alabama failed to raise the necessary funds to cover the remaining cost of the project when its bond offering undersold on the market on June 28, 2022. Alabama will now

need to come up with at least $200 million more in funding to complete this project, making the federal ARP funds even more essential.

  *b.*   ***Legislative and governmental input on ARP fund use***

125.   On September 27, 2021, Congressman Jerrold Nadler, who represents New York's 10th Congressional district and chairs the House Judiciary Committee, sent a public letter to the Secretary of the Treasury, Janet Yellen, at the Department of the Treasury in which he wrote, "Directing funding meant to protect our citizens from a pandemic to fuel mass incarceration is, in direct contravention of the intended purposes of the ARP legislation and will particularly harm communities of color who are already disproportionately impacted by over-incarceration and this public health crisis."

126.   On September 28, 2021, Congresswoman Terri Sewell, who represents Alabama's 7th Congressional district, made the following statement through a press release regarding the plan by Alabama officials to build new prisons using $400 million of federal COVID-19 relief funds from the American Rescue Plan: "I am deeply disturbed to learn that the State of Alabama is considering a plan to use $400 million of COVID-19 aid from the American Rescue Plan to build prisons, especially as COVID-19 rages on in our state." Congresswoman Sewell added, "To be clear, the current state of the Alabama prison system is abhorrent, but the use of COVID-19 relief funds to pay for decades of our state's neglect is simply unacceptable … COVID-19 relief money should be used for COVID-19 relief. Period."

127.   On October 1, 2021, Alabama House of Representatives member Juandalynn Givan of Birmingham, expressed hopes that the Federal government would step in to prevent American Rescue Plan funding from going to prison construction. In a statement given

to the Associated Press, Representative Givan said "There are many needs here in the state of Alabama and there are many people who need these funds."

128.     On October 22, 2021, Alabama State Attorney General Steven Marshall provided an opinion to the Chief Examiner, Honorable Rachel Laurie Riddle, regarding her question: "Do limitations placed on local governmental entities by the Alabama Constitution, such as sections 94, 68, and 68.01, apply to the funds received by such entities under the American Rescue Plan Act ('ARPA')?" In this opinion, Marshall acknowledges, "this Office has held that "public funds" under the Public Works Law include federal funds and that projects funded by federal money must be competitively bid under its provision" and "while [funds from various sources including those received through federal grants] may not be considered "state funds," they are public funds and must be expended as such."

*          *          *

129.     To prevent further harm, Plaintiffs seek relief from this Court.

## CLAIM FOR RELIEF

## <u>COUNT 1</u>

### *Agency action that is not in accordance with law is in violation of the APA*

130.     Plaintiffs incorporate the allegations of the preceding paragraphs by reference.

131.     Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. section 706(2)(A).

132.    Defendants are improperly condoning the decision of the state of Alabama to allocate federal funds for an improper use. Defendants have a duty to intervene, and their failure to do so constitutes a violation of APA.

133.    Despite Defendant's statements and in open defiance of APA, Defendants have permitted the state of Alabama to use limited federal funds to finance a project that does not qualify as a valid use under ARP and the associated Treasury guidance.

134.    The use of Federal funds supplied through ARP to construct prison facilities is contrary to the letter and the spirit of the law.

## COUNT 2

### *Arbitrary and capricious agency action in violation of the APA*

135.    Plaintiffs incorporate the allegations of the preceding paragraphs by reference.

136.    Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. section 706(2)(A).

137.    The failure of the Treasury to enforce its stated rule against the ADOC is arbitrary and capricious for several reasons.

138.    The Treasury stated that, in accordance with its understanding of ARP guidelines, prison construction was not a proper use of the funds. However, the Treasury inexplicably seemed to ignore its own rules for states that had already moved forward on projects that did not meet federal guidelines. In essence, the Treasury rewarded states that jumped the gun by failing to wait for the final rules it would issue about what was a proper use of funds. In Alabama's case, the state explicitly knew that the Treasury was set to weigh in on proper use of the funds, as they submitted a letter requesting clarification about whether prisons could be

financed with ARP funding. Rather than waiting for a response, Alabama moved forward with its prison plan, circumventing the authority of the Treasury to determine the proper use of congressionally appropriated funds.

139.   The Treasury's decision not to intervene in the ADOC's violation in the letter and spirit of the ARP Act is arbitrary and capricious.

## COUNT 3

### *Violation of Appropriations Clause*

140.   Plaintiffs incorporate the allegations of the preceding paragraphs by reference.

141.   Article I, Section 9, Clause 7, known as the Appropriations Clause, provides that "[n]o Money shall be drawn from the treasury, but in Consequence of Appropriations made by Law." The Appropriations Clause is a "straightforward and explicit command" that "no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Pers. Mgmt.* v. *Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co.* v. *United States*, 301 U.S. 308, 321 (1937)).

142.   The Alabama prison construction project is outside of the scope contemplated by Congress in the ARP. has not authorized or appropriated the funding that Alabama has declared it will use towards the construction of two mega-prison facilities. Defendants have therefore violated the Appropriations Clause by overseeing the funding of the prisons with funds that were not appropriated for that purpose.

143.   For the reasons stated herein, Plaintiffs are entitled to a declaration that Defendants' inaction in stopping the diversion of funding toward the construction of Alabama's

prisons is unconstitutional, and the Court should enjoin Defendants' implementation of Alabama's project.

## COUNT 4

### *Ultra Vires*

144.     Plaintiffs incorporate the allegations of the preceding paragraphs by reference.

145.     An agency cannot take any action that exceeds the scope of their constitutional and/or statutory authority.

146.     The Treasury has acted ultra vires in failing to prevent the diversion of funding to an improper project pursuant to the ARP.

147.     For the reasons stated herein, Plaintiffs are entitled to a declaration that Defendants' inaction in stopping the diversion of funding toward the construction of Alabama's prisons is unconstitutional, and the Court should enjoin Defendants' implementation of Alabama's project.

\*       \*       \*

148.     For the reasons given in Counts 1–4, Plaintiffs are entitled to a declaratory judgment that the Treasury's decision not to intervene in the ADOC's use of ARP funds to build prisons is unlawful.

### *PRAYER FOR RELIEF*

For these reasons, Plaintiffs ask the Court to:

a.       Hold unlawful the Treasury's inaction to prevent the ADOC from misusing federal monies.

b.  Issue preliminary and permanent injunctive relief to ensure that Defendants comply with the Administrative Procedure Act, and specifically to ensure that Defendants take action to stop the ADOC from proceeding with the proposed men's prison facilities unless and until they have secured funding that does not come from the funds allocated under the ARP Act.

c.  Issue declaratory relief declaring the Treasury's inaction to prevent the ADOC from misusing federal monies is unlawful.

d.  Award Plaintiffs costs and reasonable attorney's fees.

e.  Award such other relief as the Court deems equitable and just.

Respectfully submitted this 11th of July, 2022,

/s/ Richard A. Rice

Richard A. Rice (AL Bar No.: 8387166R)
The Rice Firm, LLC
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
Mailing Address - Post Office Box 453
Birmingham, AL 35201
Office: 205.618.8733 ext 101
Fax: 888.391.7193

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

## **CERTIFICATE OF SERVICE**

I, _____Richard A. Rice (AL Bar No.: 8387166R)___, do hereby certify that a true and correct copy of the foregoing has been furnished by certified mail on this 11th day of July 2022, to:

Secretary Janet L. Yellen
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

The Honorable Merrick Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

The Honorable Steve Marshall
Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130

United States Attorney's Office
Middle District of Alabama
131 Clayton Street
Montgomery, AL 36104

/s/ Richard A. Rice

Richard A. Rice (AL Bar No.: 8387166R)

*Counsel for Plaintiffs*
The Rice Firm, LLC
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
Mailing Address - Post Office Box 453
Birmingham, AL 35201
Office: 205.618.8733 ext 101

Fax: 888.391.7193